**Mary Jane ROGERS, Plaintiff–Appellant,**

v.

**SUGAR TREE PRODUCTS, INC.,
Defendant–Appellee.**

No. 92–2990.

United States Court of Appeals,
Seventh Circuit.

Argued April 12, 1993.

Decided Oct. 5, 1993.

Rehearing and Suggestion for
Rehearing En Banc Denied
Jan. 14, 1994.

Lawrence Schlam (argued), DeKalb, IL, Warren H. Larson, Larson & Larson, Rockford, IL, for plaintiff-appellant.

Jerome J. Duff (argued), Thomas R. McDonnell, St. Louis, MO, for defendant-appellee.

Before BAUER, CUDAHY and KANNE, Circuit Judges.

KANNE, Circuit Judge.

After Sugar Tree Products (STP) fired Mary Jane Rogers on October 16, 1989, she filed a complaint alleging STP violated the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634. The district court granted STP's motion to dismiss for lack of subject matter jurisdiction, holding that STP was not an employer subject to the ADEA, 824 F.Supp. 755 (1992). We affirm.

## I. Background

The mandates of the ADEA only apply to businesses that employ twenty or more individuals. 29 U.S.C. § 630(b). For federal subject matter jurisdiction to exist, the defendant must meet the definition of an employer as Congress set forth in § 630(b). *See Zimmerman v. North Am. Signal Co.,* 704 F.2d 347 (7th Cir.1983).

Rogers presented to the district court two theories under which STP met the Congressional definition of an employer. Under the first theory, Rogers argued STP, standing alone, had twenty employees during the relevant time period. In relation to Rogers' alternative theory, STP's owner and president, Fred Brown, was the owner and president of a second corporation, International Distributing Corporation (IDC). Rogers argued that STP and IDC were interrelated to such an extent that they constituted a single employer with twenty employees during the relevant time period. In deciding whether STP was an employer under either approach, the district court considered testimony given at an evidentiary hearing on the issue, depositions of various individuals associated with STP, and the parties' joint stipulations.

In addressing Rogers' argument that STP, standing alone, employed twenty individuals, the district court began by accepting the parties stipulation that STP had at least seventeen employees. The district court found that two individuals who each worked for a portion of the year in which Rogers was fired, when considered together, made up an eighteenth employee. Rogers contended that the following individuals who performed work for both STP and IDC also should be considered employees of STP: William Schmalz, Paul Burckhart, Judy Larson, and Jim Sullivan.[1]

In addition to his duties as Chief Financial Officer of IDC, Schmalz prepared STP's tax returns and spent about one hour a month reviewing its financial records. Burckhart worked as an accounts payable clerk at IDC, but would spend some of his time keeping financial records for STP. While Burckhart did not send out invoices for STP, he spent one-third of his time keeping its financial records. Finally, Larson worked as a transportation dispatcher for IDC and also performed a similar function for STP. For their services, all three individuals received a lump-sum bonus from STP.

Although Sullivan was a full-time employee of IDC, the testimony conflicted on the extent of his involvement with STP's operations. A former plant manager of STP testified that Sullivan gave him a set of specific performance objectives and expected reports on all facets of the plant's operations. The succeeding plant manager testified that Sullivan acted more like a consultant to STP,

---

[1] Rogers further argued that a former partial owner of STP who was still technically on its payroll was an employee of STP. The district court held otherwise, a finding that Rogers does not appeal.

providing input on certain decisions such as those involving major capital expenditures. In 1988 and 1989, Sullivan made several trips to STP's plant in Belvidere, Illinois to perform management services. He was involved in the hiring of Jones as plant manager as well as the hiring of Rogers' replacement. In responding to Rogers' discrimination claim filed with the Equal Employment Opportunity Commission, he signed a letter on STP stationary as the "Agricultural VP." STP paid Sullivan a bonus based on its profits.

The district court held that, with regard to the status of these individuals, only Sullivan was an employee of STP, thus bringing the total to nineteen. Falling one short of the requirement of twenty, Rogers' theory that STP, standing alone, was an employer subject to the ADEA was rejected by the court.

Turning to her second theory, in addition to the shared individuals discussed above and Brown's ownership of both corporations, Rogers introduced the following evidence of the relationship between STP and IDC. In its plant in Belvidere, Illinois, STP processed nonedible food refuse into components for animal feed, that, in turn, were sold to third parties. STP purchased the food refuse from a substantial number of sources, one of which was IDC, whose operations are located in St. Louis, Missouri. In some instances, STP merely processed material for IDC in exchange for a milling charge. Sales to IDC generated approximately 40% of STP's revenues. Also, STP charged IDC for the storage of certain materials at an STP facility, and IDC scheduled the shipping of some of STP's product through a common carrier. However, an STP plant manager characterized these transactions as "arm's length" because he priced them without any input from IDC employees. Because STP did not have twenty-five employees as required for an independent pension plan, Brown combined the STP employees' plan with that of IDC, although each corporation made separate contributions to the plan for its own employees.

The district court held that, although Brown owned both corporations, the every day operations of STP and IDC were not sufficiently interrelated to constitute a single employer under ADEA. Accordingly, the district court dismissed the suit for lack of subject matter jurisdiction, and Rogers appeals.

## II. *The Relevant Time Period Under § 630(b)*

■ Before examining the merits of Rogers' appeal, we address a preliminary matter that was not raised by the parties. Section 630(b) defines an employer subject to the ADEA as "a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 29 U.S.C. § 630(b). The district court mistakenly accepted the parties' stipulation that the relevant time frame was the twenty-four months immediately preceding Rogers' discharge, or October 17, 1987 through October 16, 1989.

Under § 630(b), the term "calendar year" means the period between January and December, rather than any period of twelve consecutive months. *McGraw v. Warren County Oil Co.*, 707 F.2d 990, 991 (8th Cir. 1983) (per curiam). The current year is the year in which the alleged violation occurred, and the applicable period does not cease on the date of the violation, but rather continues until the end of the calendar year. *See Slack v. Havens*, 522 F.2d 1091, 1093 (9th Cir.1975) (interpreting similar language in 42 U.S.C. § 2000e(b)). Because Ms. Rogers was fired in October of 1989, the 1988 and 1989 calendar years comprise the relevant time period under § 630(b).

■ The parties may not alter the § 630(b) requirements for subject matter jurisdiction. In other words, the parties cannot subvert the jurisdictional provisions of the ADEA by agreeing to determine whether the defendant has the requisite number of employees under a time frame different from that enacted by Congress. In the case before us, the stipulated time frame accepted by the district court begins and ends too early; it improperly includes the period between October 17, 1987 and December 31, 1987, but does not consider the period be-

tween October 17, 1989 and December 31, 1989.

Although the district court should not have accepted the parties' stipulated time period which improperly included three months in 1987, our review of the record reveals that, in making its decision, it only considered evidence related to 1988 or 1989, the proper time period under § 630(b). The parties specifically stipulated that STP employed at least seventeen individuals from January 1, 1989 until October 16, 1989, a period of over twenty calendar weeks within the applicable time frame under § 630(b). Furthermore, in compiling other evidence on the jurisdictional issue at the evidentiary hearing and during depositions, the parties' attorneys directed their questions to the state of STP's operations in 1988 or 1989.

■ As a result of the stipulation, it is possible that the parties neglected to introduce relevant jurisdictional evidence related to the time period of October 17, 1989 through December 31, 1989. However, as the party asserting jurisdiction, Rogers bears the burden of submitting evidence that STP meets the definition of an employer under § 630(b). *See Bowyer v. United States Dept. of Air Force*, 875 F.2d 632, 635 (7th Cir. 1989), *cert. denied*, 493 U.S. 1046, 110 S.Ct. 846, 107 L.Ed.2d 840 (1990). To the extent she failed to produce all the relevant evidence available relating to the number of employees under § 630(b), she simply has failed to meet that burden. Because the acceptance of the parties' stipulated relevant time frame did not impact the factual basis for the district court's decision, we turn to the merits of Rogers' appeal.

### III. *STP Standing Alone*

■ The ADEA defines an "employee" as "an individual employed by any employer." 29 U.S.C. § 630(f). In the context of a Title VII claim, we have stated that " '[i]n determining whether a business relationship is one of employee-employer, courts look to the "economic realities of the relationship and the degree of control the employer exercises over the alleged employee." ' " *Knight v. United Farm Bureau Mutual Ins. Co.*, 950 F.2d 377, 380 (7th Cir.1991) (citations omit-

ted). This standard applies equally to a claim under the ADEA. *E.E.O.C. v. Zippo Mfg. Co.*, 713 F.2d 32, 38 (3d Cir.1983).

In examining the nature of the disputed relationships, the district court looked to the factors we implicitly adopted in *Knight:*

> (1) the extent of the employer's control and supervision over the worker, including directions on scheduling and performance of work, (2) the kind of occupation and nature of skill required, including whether skills are obtained in the workplace, (3) responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance of operations, (4) method and form of payment and benefits, and (5) length of job commitment and/or expectations.

*Id.* at 378–79 (citations omitted).

■ On appeal, Rogers accepts the district court's use of the *Knight* factors to determine who is an employee of STP, but argues that it erred as a matter of law by finding that Schmalz, Burckhart, and Larson were not employees of STP even though their work was controlled by Brown, the owner and president of both STP and IDC. We disagree. While control is an important factor in determining employee status, it is not the only factor. *Id.* at 378. By not limiting its inquiry to the issue of control and examining other evidence of the nature of the relationship between the disputed individuals and STP, the district court demonstrated a correct understanding of the law.

■ "Generally, '[if] the trial judge correctly states the law, then his findings as to whether the facts meet the legal standard will be disturbed only if they are clearly erroneous.' " *Id.* at 379 (quoting *Daniels v. Essex Group, Inc.*, 937 F.2d 1264, 1269 (7th Cir.1991)). While Brown controlled the employment of the individuals whose status is in dispute, the district court found that he did so in his capacity of president of IDC, not of STP. Thus, in light of the other factors, the court concluded that Schmalz, Burckhart, and Larson were not employees of STP.

We cannot say that the district court was clearly erroneous in reaching this conclusion.

All three individuals were paid a salary by IDC, but received a lump-sum payment from STP in exchange for the performance of specific, limited tasks—tax return preparation, bookkeeping, and dispatching. STP did not withhold employment taxes from these bonus payments. Furthermore, the individuals performed their work for STP at IDC's offices in St. Louis and at IDC's expense. Together, these facts made the individuals similar to independent contractors performing work for STP. The control of their actions by Brown, the owner and president of IDC, does not alter this conclusion merely because Brown also served as the owner and president of STP.

We reject Rogers' argument that Schmalz, Burckhart, and Larson have the same relationship with STP as Sullivan, and thus if Sullivan is an employee of STP, they all should be considered employees of STP. Unlike the other three individuals, Sullivan received a bonus based on STP's profitability. While Schmalz, Burckhart, and Larson performed their services for STP in IDC facilities, Sullivan travelled to STP's plant several times a year, at STP's expense. Damerow, a former STP plant manager, stated that he considered Sullivan to be his boss, and in a letter responding to Rogers' EEOC claim, Sullivan characterized himself as an employee of STP, to wit, the vice-president of agriculture. "We are not to re-weigh the factual findings of the district court." *Knight*, 950 F.2d at 381. Based on a record that supports the district court's findings, it was not clearly erroneous for the district court to hold that STP, standing alone, did not employ a sufficient number of employees to meet the definition of an employer subject to the ADEA.

IV. *STP and IDC as a Single Employer*

 Even if STP, standing alone, does not meet the requirements of § 630(b), Rogers argues that the district court erred by not considering STP and IDC together as a single employer headed by Brown, to which the ADEA applies. Under the judicially created single employer or integrated enterprise theory, the interrelation of two nominally separate business entities may lead a court to consider them as a single entity. *N.L.R.B. v. Western Temporary Servs., Inc.*, 821 F.2d 1258, 1266 (7th Cir.1987) (applying the National Labor Relations Act). While this doctrine originated in the area of labor relations, *see Radio and Television Broadcast Technicians Local Union 1264 v. Broadcast Serv. of Mobile, Inc.*, 380 U.S. 255, 256, 85 S.Ct. 876, 877, 13 L.Ed.2d 789 (1965), its application has been extended to the definition of an employer subject to the ADEA under § 630(b). *York v. Tennessee Crushed Stone Ass'n*, 684 F.2d 360, 362 (6th Cir.1982). In determining whether a single employer exists, the court should consider:

(1) Interrelation of operations, *i.e.* common offices, common record keeping, shared bank accounts and equipment.

(2) Common management, common directors and boards.

(3) Centralized control of labor relations and personnel.

(4) Common ownership and financial control.

*Id.* Although the presence or absence of any one factor is not controlling, in light of the ADEA's goal of remedying and eliminating age discrimination in the workplace, "control over the elements of labor relations is a central concern." *Armbruster v. Quinn*, 711 F.2d 1332, 1337 (6th Cir.1983).

 Single employer issues often arise in the context of the relationship between a parent corporation and its subsidiary. A plaintiff may argue that the subsidiary is just a "sham" corporation, created to avoid application of certain laws, while remaining under the full control of its parent. Even without any evasive purpose, the power to control comes with ownership. When the parent exercises such extensive control over the subsidiary's operations and personnel decisions that, in effect, the two corporations are one, courts are willing to consider the parent along with the subsidiary as the employer subject to the applicable statute. *See, e.g., id.; Bruce v. S & H Riggers and Erectors, Inc.*, 732 F.Supp. 1172 (N.D.Ga.1990).

 However, this case presents a different situation because STP and IDC do not have an ownership interest in each other. In

arguing that STP and IDC constitute a single employer, Rogers is in effect arguing that two corporations that share the same owner are a single employer. The single employer doctrine is not limited to parent-subsidiary relationships, but the issue becomes more difficult when considering whether two separate corporations owned by a single entity should be considered a single employer for purposes of the ADEA. Unlike when a parent and its subsidiary are viewed as one corporation because the parent controls the personnel decisions of the subsidiary, the fact two corporations share the same owner does not, in and of itself, tend to show that one of these corporations controls the personnel decisions of the other. Hence, those two corporations do not necessarily constitute a single employer subject to the ADEA. *Mochelle v. Walter, Inc.*, 823 F.Supp. 1302 (M.D.La.1993) (two subsidiaries did not constitute single employer despite their ownership by same holding company).

"The showing required to warrant a finding of single employer status has been described as 'highly integrated with respect to ownership *and* operations.'" *McKenzie v. Danvenport–Harris Funeral Home*, 834 F.2d 930, 933 (11th Cir.1987) (quoting *Fike v. Gold Kist, Inc.*, 514 F.Supp. 722, 726 (N.D.Ala.), *aff'd*, 664 F.2d 295 (11th Cir.1981)) (emphasis added). Moreover, under the single employer doctrine,

> the most important requirement is that there be sufficient indicia of an interrelationship between the immediate corporate employer and the affiliated corporation to justify the belief on the part of an aggrieved employee that the affiliated corporation is jointly responsible for the acts of the immediate employer. When such a degree of interrelatedness is present, we consider the departure from the "normal" separate existence between entities an adequate reason to view [one corporation's] conduct as that of both.

*Armbruster*, 711 F.2d at 1337.

In the case before us, Brown wears two hats—that of president and owner of STP and that of president and owner of IDC. As a result, he ultimately controlled all their personnel decisions. Under the factors used by the court in *York*, the shared control of labor and common ownership tend to show that STP and IDC could be viewed as a single employer. Nonetheless, the fact that Brown owns both STP and IDC does not necessarily mean that IDC is "jointly responsible" for STP's actions. Rather, more is needed to show that IDC and STP are interrelated to such a degree that departure from their normal separate existence is warranted.

For that reason, the district court closely examined the two other factors that guide the single employer inquiry—interrelation of operations and common management. Other cases involving similar business arrangements lend support to the district court's approach in this case. For example, in *E.E.O.C. v. Arlington Transit Mix, Inc.*, 734 F.Supp. 804, 807 (E.D.Mich.1990), *rev'd on other grounds*, 957 F.2d 219 (6th Cir.1991), the court found that two corporations owned by a single individual constituted a single employer for Title VII jurisdictional purposes when their operations were so interrelated that "except for the name printed on their paychecks, [employees] were not even sure which entity employed them or their coworkers." *Id.* On the other hand, in *Kelber v. Forest Elec. Corp.*, 799 F.Supp. 326, 331 (S.D.N.Y.1992), two subsidiaries were owned by the same parent, shared certain high level management, and some employees performed functions for both corporations. Nonetheless, they were not considered a single employer because the two companies maintained separate field operations. *Id.* These cases demonstrate that the district court's reliance on the absence of highly interrelated operations to reject the application of the single employer doctrine, even though the fact both companies were owned by the same individual, did not constitute an error of law.

Consequently, we turn to the question of whether the district court's holding that STP and IDC did not constitute a single employer was clearly erroneous. The record indicates that STP and IDC maintained distinct businesses. Each company had its own records, plants, equipment, and facilities, with STP located in Illinois and IDC located in Mis-

souri. Testimony indicated that, to the extent the two corporations purchased, processed, or stored each other's products, these transactions were made at "arm's length." With regard to common management other than the owner, Rogers presented evidence of only a single individual, Sullivan, who was involved in the management of both STP and IDC. The district court did not commit clear error when it determined that the evidence failed to demonstrate that STP and IDC constituted a single employer subject to the ADEA.

## V. *Conclusion*

Summing up, the district court did not commit clear error in holding that STP independently fails to meet the definition of an employer subject to the ADEA under § 630(b) and that STP and IDC do not constitute a single employer. Accordingly, we AFFIRM the district court's dismissal of this case for lack of subject matter jurisdiction.