**Carl RITTMEYER, Plaintiff,**

v.

**ADVANCE BANCORP, INC., a Delaware corporation, Defendant.**

**No. 94 C 172.**

United States District Court, N.D. Illinois, Eastern Division.

Nov. 2, 1994.

Harry Golter, Hamblet, Casey, Oremus & Vacin, Chicago, IL, for plaintiff.

Fredrick Hayze Bates, Kathie M. Contois, Albert, Bates, Whitehead & McGaugh, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Carl Rittmeyer brings this one count complaint against defendant Advance Bancorp, Inc. ("Bancorp"), alleging violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621–634. Presently before us is defendant's motion to dismiss or in the alternative for summary judgment. For the reasons set forth below, Bancorp's motion to dismiss is granted.

### I. Background

Beginning in 1986, plaintiff Rittmeyer was the Controller of Concordia Federal Bank for Savings ("Concordia"). Two years after his coming on board, Concordia was declared insolvent and taken over by the Resolution Trust Corporation ("RTC"). Rittmeyer was retained as Controller of Concordia during the period of RTC control from 1988 to 1990.

In May 1990, certain assets and liabilities of Concordia were purchased by Advance Bank, s.b. ("AB"), a 100%–owned subsidiary of Bancorp. At this time Rittmeyer was asked by James A. Fitch, President of Bancorp and then-acting President of AB, to stay on as Controller of AB for the same salary as he was receiving at Concordia ($58,000 per year). Plaintiff accepted this offer, and worked for AB for almost two years.

In January 1992, James Fitch, as President of Bancorp, hired Rittmeyer to be Treasurer and Controller of Bancorp at the same rate of compensation that he was receiving at AB.[1] In May of the following year, Rittmeyer inquired with James Fitch about the possibility of a raise and advancement—specifically, promotion to President of Bancorp. The parties disagree as to what was actually said at this and subsequent meetings,[2] but there is no dispute that plaintiff's request for a raise and a promotion was rejected. On September 20, 1993, Rittmeyer—who was 51 years of age—met with Fitch and Bancorp's Human Resource Director, Judy Rita. At this meeting Fitch told Rittmeyer that he was being terminated as Controller of Bancorp but would remain on the payroll until the end of the month. On October 22, 1993, plaintiff filed a charge of age discrimination with the Illinois Department of Human Rights. Prior to any disposition of this charge, plaintiff filed the instant action on January 11, 1994.

At all relevant times, Bancorp—a bank holding corporation—owned 100% of the stock of AB and South Central Bank ("SCB"). Bancorp's only office is in Homewood, Illinois, and it employed 12 and 10 employees in 1992 and 1993, respectively. AB is an Illinois chartered savings bank with thirteen separate locations in Illinois and a nine member Board of Directors. SCB is an Illinois chartered commercial bank with four separate locations and a Board of ten Directors. Although the banks operate out of separate offices, they do coordinate certain services such as payroll and employee benefits pursuant to an agreement executed in July 1993 ("Agreement"). In pertinent part, the Agreement provides that:

> The administration of employee policies and benefits plus payroll services are provided for all employees of all affiliates by the staff at Bancorp. The payroll cost of this staff will be prorated to Bancorp, South Chicago Bank and Advance Bank based on the number of employees at each affiliate.

> Bancorp supervises the payroll for all affiliates and the affiliates are reimbursed as appropriate. Bancorp makes provision for certain employee benefits such as Employee Medical Care plans, Profit Sharing Plan, etc. The cost of these benefits will be apportioned to each affiliate, based on the enrollment of employees.

Agreement, at 4. The Agreement provides for all services to be performed on a fee-for-service basis.

## II. Discussion

■ Bancorp makes three arguments in support of its motion. First, it contends that

---

1. Bancorp asserts that federal bank examiners discovered certain errors in AB's financial records in December 1990, but that due to a pending acquisition Rittmeyer was not terminated or disciplined. Rather, Bancorp claims it offered Rittmeyer the position of Controller of Bancorp in an effort to show him some leniency. Rittmeyer strenuously denies that he was ever informed by federal examiners or Bancorp of any errors or irregularities in AB's financial records. Fortunately, we need not discern Bancorp's motivation for hiring Rittmeyer in order to resolve the jurisdictional issue before us.

2. Plaintiff alleges that Fitch said he would look into whether the Board of Directors would consider him for the position of president. A week or so later, plaintiff alleges that Fitch informed him that the presidency of Bancorp would not be

available and that the Board of Directors had decided to replace Rittmeyer with someone younger and less expensive. Plaintiff claims that at this point he began looking for alternative employment.

Defendant claims that Fitch rejected plaintiff's request to be president at their initial meeting of May 1993, and at that point plaintiff said he would be forced to seek other employment. Defendant claims that plaintiff informed fellow employees that he was looking for other employment because he had been refused a raise and a promotion. Fitch denies that he ever told Rittmeyer he was going to be replaced by a younger, less expensive person; rather, he contends that Bancorp only began searching for Rittmeyer's replacement after he indicated his intention to leave.

Rittmeyer's action should be dismissed because he has failed to exhaust his administrative remedies. Second, Bancorp argues that we lack jurisdiction to hear this case because during 1992–93 it did not employ at least twenty persons as required for cases filed under the ADEA, 29 U.S.C. § 630(b). Third, defendant asserts that Rittmeyer cannot establish that he was terminated due to his age, and therefore it is entitled to judgment as a matter of law. Because we agree with Bancorp's second argument as to the propriety of our jurisdiction, we need only address that issue.[3]

■■■ A motion attacking subject matter jurisdiction is properly brought as one to dismiss the case under Federal Rule of Civil Procedure 12(b)(1), rather than as a motion for summary judgment. *Capital Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir.1993). As opposed to a facial attack on our jurisdiction, Bancorp has questioned the factual basis behind plaintiff's claim that we have jurisdiction over this matter. In answering such a motion, plaintiff cannot simply rest on its pleadings, since we are entitled to consider evidence outside the well-pleaded allegations of plaintiff's complaint. *Id.; American Agriculture Movement, Inc. v. Board of Trade of the City of Chicago*, 848 F.Supp. 814, 817 (N.D.Ill.1994). Rather, plaintiff bears the burden of establishing that all of the jurisdictional requirements have been met. *See Kontos v. United States Dept. of Labor*, 826 F.2d 573, 576 (7th Cir.1987); *Sprague v. King*, 825 F.Supp. 1324, 1329 (N.D.Ill.1993), *aff'd*, 23 F.3d 185 (7th Cir.1994).

■■■ A claim under the ADEA may only lie against an "employer," which is defined as "a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 29 U.S.C. § 630(b). Ban-

corp claims that is does not fit this definition of an employer, since it only employed twelve people in 1992 and ten people in 1993 (the year Rittmeyer was terminated). Instead of disputing these figures, plaintiff counters that the judicially created "single employer" doctrine should be applied to include the employees of AB and SCB as part of Bancorp. Under the single employer doctrine, two nominally separate businesses may be so intertwined as to lead a court to consider them one entity for the purposes of the ADEA. *Rogers v. Sugar Tree Products, Inc.*, 7 F.3d 577, 582 (7th Cir.1993). If the employees of AB and SCB are included in Bancorp's total, then defendant would be an "employer" subject to the requirement of the ADEA.

■■■ In the context of a parent-subsidiary relationship, "[w]hen the parent exercises such extensive control over the subsidiary's operations and personnel decisions that, in effect, the two corporations are one, courts are willing to consider the parent along with the subsidiary as the employer subject to the applicable statute." *Rogers*, 7 F.3d at 582; *see also Frishberg v. Esprit de Corp., Inc.*, 778 F.Supp. 793, 800 (S.D.N.Y. 1991) (highly interrelated companies can be held jointly responsible for acts of immediate employer), *aff'd*, 969 F.2d 1042 (2d Cir.1992). The Seventh Circuit recently reiterated the factors to consider when applying the single employer doctrine in the context of the ADEA:

(1) Interrelation of operations, *i.e.*, common offices, common record keeping, shared bank accounts· and equipment.

(2) Common management, common directors and boards.

(3) Centralized control of labor relations and personnel.

(4) Common ownership and financial control.

---

**3.** We note, however, that defendant's first argument that Rittmeyer must wait until he receives a Right to Sue letter from the EEOC is meritless. As opposed to Title VII cases, ADEA cases may be filed without the issuance of a Right to Sue letter so long as the complaint is filed at least 60 days after the filing of a charge with the EEOC. *Compare* 29 U.S.C. § 626(d) (ADEA), *with* 42 U.S.C. § 2000e–5(f)(1) (Title VII). If, and only if,

the charges are terminated or dropped by the EEOC, then the complainant must file his federal complaint within 90 days of receiving notice of such termination. 29 U.S.C. § 626(e). Otherwise, the filing of a federal cause of action under the ADEA is in no way tied to the disposition of a charge before the EEOC. *Deringis v. National Cleaning Contractors, Inc.*, No. 94 C 3877, 1994 WL 484589, at *1 (N.D.Ill. Sept. 2, 1994).

*Rogers,* 7 F.3d at 582. Although the relative weight of each factor is not clearly delineated, given the ADEA's purpose of preventing age discrimination in the workplace the most significant aspect of a business to consider is whether there is centralized control over labor relations. *Id.* Furthermore, the two corporations at issue must be "highly integrated with respect to ownership *and* operations" in order for the single employer doctrine to apply. *Id.* at 583 (quoting *McKenzie v. Davenport–Harris Funeral Home,* 834 F.2d 930, 933 (11th Cir.1987)).

### A. Interrelation of Operations

■ Although plaintiff contends that Bancorp, AB and SCB are an integrated enterprise, there is very little support for such an assertion. Each bank has its own staff and maintains separate offices. These offices operate at different times, have different phone numbers, and offer different services. All three banks are regulated by different agencies: Bancorp is regulated by the Federal Reserve Board, SCB is regulated by the Illinois Commissioner of Banks and Trust Companies, and AB is regulated by the Illinois Commissioner of Savings and Residential Finance. As such, each bank is subject to a different regulatory scheme. There is no indication that the three corporations have shared records or bank accounts,[4] and the July 1993 Agreement requires the parties to pay each other for the use of any equipment or office space.[5] Although the Agreement does provide for the coordinated performance of certain tasks common to all the banks, each bank must pay for the services it receives. In sum, the operations of Bancorp, AB and SCB are not significantly interrelated.

■ Plaintiff argues because Bancorp's income is derived solely from AB and SCB,

the three banks have interrelated operations. However, "merely because a parent corporation eventually benefits from the work of its subsidiaries is not evidence of interrelated operations...." *Frank v. U.S. West, Inc.,* 3 F.3d 1357, 1362 (10th Cir.1993). Rather, plaintiff needs to demonstrate that in producing this income, the three corporations have such interrelated operations that they should be considered a single employer.

Plaintiff also contends that Bancorp's 1993 Consolidated Financial Statement filed with the Federal Reserve Bank of Chicago demonstrates the required amount of interrelation between the three organizations, since Bancorp includes the employees of AB and SCB in its total number of employees. Bancorp responds that the Federal Reserve Board requires bank holding companies to include the employees of their subsidiaries on the Consolidated Statement, and defendant has submitted a copy of such instructions from the Federal Reserve. We agree with Bancorp. Rather than demonstrating the integration of the three banks, the employment data in Bancorp's 1993 Consolidated Statement merely proves that it can follow the directions of the Federal Reserve. In sum, plaintiff has failed to demonstrate that Bancorp, AB and SCB have the requisite degree of interrelated operations.

### B. Common Members of Boards and Management

■ With regard to the management of each bank, Bancorp, AB and SCB each have their own Board of Directors and their own managers. According to plaintiff, the fact that certain of Bancorp's directors serve on the one or two of the other boards proves that the three corporations are an integrated enterprise.[6] We disagree. Five of SCB's

---

4. We note that Bancorp asserts in its memorandum in support of summary judgment that the banks have separate records, books and accounts. However, there is no support in either defendant's 12(M) or its affidavits for this assertion. Plaintiff has not challenged this assertion, and we do not find this factor to be dispositive of this motion. We nonetheless admonish defendant Bancorp and its attorneys to pay closer attention to the factual support for its motions.

5. The only exception to this last requirement is that each bank agrees to maintain an office for the President of Bancorp.

6. With regard to this issue, we note that defendant has objected to certain exhibits in plaintiff's 12(N) statement as being unverified and incomplete in contravention of Federal Rule of Civil Procedure 56(e). *See Bee v. Local 719, United Autoworkers,* 744 F.Supp. 835 (N.D.Ill.1990). These objections are currently before Magistrate Judge Guzman. However, because we would

ten directors are on the Board of Bancorp. Six of AB's nine directors are directors of Bancorp. This overlap does not demonstrate such an intertwined existence between the three corporations to require application of the single employer doctrine. Nor do the corporations have the same management. Indeed, there is only one common member of management among the three corporations— James A. Fitch is President of both Bancorp and SCB.

■ Even if we were to find the overlap in directors and management to be significant, the single employer doctrine requires more than simply an overlap in boards or management. *See Johnson v. Flowers Indus., Inc.*, 814 F.2d 978, 982 (4th Cir.1987) (parent not considered employer merely because it choose subsidiary's directors as officers). For example, in *Kelber v. Forest Elec. Corp.*, 799 F.Supp. 326, 331 (S.D.N.Y.1992), two subsidiaries were not considered a single employer although they were owned by the same parent, shared certain managers, and had common tasks performed by the same persons. The court found that because the two companies had separate field operations, their separate status would not be altered for purposes of applying the ADEA. *Id.* Similarly, even if we were to agree with plaintiff that a significant degree of commonality existed between the management of the three organizations, consideration of other factors leads us to conclude that single employer status is inapplicable in this case.

*C. Centralized Control of Labor Relations*

■ The third, and perhaps most critical factor, of the single employer analysis is the extent to which the parent corporation controls the labor relations of its subsidiaries. *Rogers*, 7 F.3d at 582; *Mochelle v. J. Walter, Inc.*, 823 F.Supp. 1302, 1305 (M.D.La.1993) ("Courts which have applied this four-part standard have focused on the ... centralized control of labor relations."), *aff'd*, 15 F.3d 1079 (5th Cir.1994). Plaintiff claims that such centralized control is demonstrated by the Agreement between Bancorp, AB and SCB, which provides for the consolidated administration of employee payroll, benefits and policies by Bancorp. However, plaintiff must show more than simply Bancorp's broad policy statements concerning employment; rather, to satisfy this prong of the single employer analysis "a parent must control the day-to-day employment decisions of the subsidiary." *Frank*, 3 F.3d at 1363. The Agreement does not specifically spell out which services Bancorp is to provide to its subsidiaries, but rather, speaks only of the payroll and welfare benefits which are to be paid for by each separate bank. Thus, to the extent Bancorp exercises centralized control over employees of AB and SCB, it does not constitute the day-to-day oversight contemplated by the single employer doctrine.

■ Moreover, defendant has submitted numerous affidavits which undermine plaintiff's assertion of central control over labor relations. For example, AB Executive Vice President Mary Palka, who is responsible for labor relations at AB, asserts that AB hires, fires, and disciplines its employees without regard to Bancorp, and that AB determines the salaries and schedules of its own employees. This same autonomy is attested to by SCB Assistant Vice President Leona Devon and Bancorp Human Resources Director Judy Rita. Moreover, defendant contends that each bank controls and monitors its own labor relations. Plaintiff fails to adequately respond to these allegations, but merely denies their accuracy. Such denials are not sufficient to survive a factual attack on our subject matter jurisdiction; rather, plaintiff must set forth through affidavits or other evidence the existence of specific facts which show that jurisdiction is proper. *Kontos v. United States Dept. of Labor*, 826 F.2d 573, 576 (7th Cir.1987). As discussed above, the only facts which plaintiff relies on—the terms of the July 1993 Agreement and Bancorp's 1993 Consolidated Statement—do not support its claim that Bancorp is the same employer as AB and SCB. Since there is no indication that Bancorp exercised control over AB or SCB's labor relations, especially

reach the same conclusion on the instant motion with or without plaintiff's exhibits, we need not wait for a ruling on these objections. Therefore, for purposes of this motion we will consider plaintiff's exhibits to be proper.

its hiring and firing decisions, plaintiff cannot defeat a 12(b)(1) motion to dismiss simply by alleging that such central control exists.

 Finally, plaintiff points to the fact that James A. Fitch hired him and others from Concordia to AB in 1988 as support for his contention that labor relations are centrally controlled. However, during the week that Concordia was acquired by AB, Fitch was acting president of AB. In his capacity as president of AB—and not as a manager of Bancorp—he clearly had the authority to direct the hiring and firing of its employees. Rather than supporting plaintiff's theory of centralized control, Fitch's hiring of Rittmeyer during his tenure as president only indicates that the management of each individual bank makes its own hiring and firing decisions.

### D. Common Ownership and Financial Control

 At all relevant times Bancorp owned 100% of the stock of both AB and SCB. However, the fact that defendant owns both subsidiaries—and thus has shareholder control over them—does not by itself justify a finding of single employer status. *Frank*, 3 F.3d at 1364 (common ownership alone can never establish parent liability). Indeed, in *Rogers* the Seventh Circuit explicitly declined to consider two subsidiaries jointly responsible for each other's employment decisions simply because they were wholly owned by the same person. *Rogers*, 7 F.3d at 583. Similarly, "more is needed to show that [Bancorp, AB and SCB] are interrelated to such a degree that departure from their normal separate existence is warranted." *Id.* Rittmeyer has failed to demonstrate much more than this common ownership, and, consequently, we decline to apply the single employer doctrine to Bancorp and its subsidiaries.

### III. Conclusion

Plaintiff has failed to demonstrate that defendant Bancorp is an employer within the meaning of the ADEA. We therefore lack subject matter jurisdiction over this case.

Accordingly, defendant's motion to dismiss is granted. It is so ordered.