### EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,

v.

**OAK LAWN LTD. II d/b/a Oak Lawn Holiday Inn, Oak Lawn Inn, Incorporated, Oak Lawn Lodge, Incorporated, Wiegel & Kilgallen Sales Co., The Estate of George E. Wiegel, Sr. and Hotel, Motel, Club, Cafeteria, Restaurant Employees & Bartenders Union, Local 450 AFL—CIO, and George E. Wiegel, Jr. and Anne Caryl Boyd as Co–Trustees of the Family Trust u/w/o George E. Wiegel, Sr. and The Marital Trust u/w/o George E. Wiegel, Sr., Defendants.**

#### No. 96 C 959.

United States District Court, N.D. Illinois, Eastern Division.

Dec. 1, 1997.

Jean Powers Kamp, Mary B. Manzo, John C. Hendrickson, Gregory M. Gochanour, U.S. Equal Employment Opportunity Com'n, Chicago, IL, for Plaintiff.

Steven H. Adelman, John Michael Phelan, Lord, Bissell & Brook, Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

The Equal Employment Opportunity Commission ("EEOC") brought suit against various entities and individuals pursuant to Title VII, 42 U.S.C. § 2000e *et seq.* Certain defendants, Oak Lawn Limited II ("Ltd.II"), Wiegel & Kilgallen Sales Co. ("W & K"), the Estate of George E. Wiegel, Sr. (the "Estate"), and George E. Wiegel, Jr. and Anne Caryl Boyd as co-trustees of the Marital Trust u/w/o George E. Wiegel, Sr. and the Family Trust u/w/o George E. Wiegel, Sr. (the "Trusts"), seek summary judgment on

the ground that they are not employers within the meaning of Title.VII. The EEOC filed a cross motion for summary judgment seeking a declaration that they are employers under Title VII. For the reasons set forth below, the EEOC's motion for summary judgment is granted and the defendants' motion is denied.

### Background

In February 1996, the EEOC filed the present action against the Oak Lawn Lodge, Inc. (the "Lodge"), the Oak Lawn Inn, Inc. (the "Inn"), and Ltd. II. The complaint alleged discriminatory hiring of employees by the Lodge and the Inn. In October 1996, the Estate and W & K were added as additional defendants.

The Lodge and the Inn are Illinois corporations running the operations of the Holiday Inn Oak Lawn ("Holiday Inn"). The Holiday Inn has more than 15 employees, but Ltd. II, the Estate, and W & K either have no employees or less than 15 employees.

### Motion for Summary Judgment

As a jurisdictional prerequisite to the maintenance of a Title VII action, a plaintiff must prove that the defendant employer is "a person engaged in an industry affecting commerce who has 15 or more employees...." 42 U.S.C. § 2000e(b). The defendants first contend that the Estate cannot be liable because it is an individual, and individuals are not liable under Title VII. In the alternative, the defendants argue that even if the Estate could be liable, neither Ltd. II, W & K nor the Estate are employers within the meaning of Title VII because they do not have more than 15 employees and cannot be viewed as a single employer or integrated enterprise.

### A. The Estate can be Liable Under Title VII

An individual who does not independently meet Title VII's definition of an "employer" cannot be held liable under Title VII. *E.E.O.C. v. AIC Security Investigations, Ltd.*, 55 F.3d 1276, 1279–82 (7th Cir.1995) (an ADA case applying reasoning from other circuits in Title VII cases); *Williams v. Banning*, 72 F.3d 552, 553–54 (7th Cir.1995) (ap-

plying *AIC* to Title VII cases). This means that an individual, who does not employ any employees but is merely a supervisor for a company, cannot be personally liable for unlawful acts of discrimination. However, if the individual is a sole proprietor, with 15 or more employees, the sole proprietor is liable under Title VII. *AIC,* 55 F.3d at 1280 n. 2.

■ In this case, it is undisputed that the Estate filed with the Internal Revenue Service in 1994 a Schedule C—Profit or Loss From Business (Sole Proprietorship), indicating that it was a sole proprietor managing a hotel complex. In addition, the Estate admitted that it had the authority to carry on, control, and administer the operations of the Lodge and the Inn. Therefore, as a sole proprietor, running a hotel business, the Estate can be liable under Title VII if it meets the statutory definition of an employer.

### B.   Single Employer/Integrated Enterprise

■ The EEOC argues that the Lodge, the Inn, Ltd. II, W & K, and the Estate are employers under the single employer or integrated enterprise theory. Under this judicially-created theory, "the interrelation of two nominally separate business entities may lead a court to consider them as a single entity." *Rogers v. Sugar Tree Prods., Inc.,* 7 F.3d 577, 582 (7th Cir.1993). Although this theory was originally applied in the labor relations area, *see, e.g., N.L .R.B. v. Western Temporary Servs., Inc.,* 821 F.2d 1258, 1266 (7th Cir.1987), it was extended to the definition of employer under the Age Discrimination in Employment Act ("ADEA"). *Rogers,* 7 F.3d at 582. Since the ADEA was modeled after Title VII and its definition of employer is almost identical, I find that this doctrine can also be applied to Title VII cases.

■ To determine whether the Estate, Ltd. II, W & K and the Lodge and Inn are a single employer, I must examine whether they are "highly integrated with respect to ownership and operations." *Id.* at 583 (quo-

tation omitted). The factors to consider include:

(1) Interrelation of operations, i.e. common offices, common record keeping, shared bank accounts and equipment.

(2) Common management, common directors and boards.

(3) Centralized control of labor relations and personnel.

(4) Common ownership and financial control.

*Id.* at 582. "[T]he presence or absence of any one factor is not controlling," but in light of the goal of eliminating discrimination, the central consideration is the centralized control over labor relations and personnel. *Id.* (quoting *Armbruster v. Quinn,* 711 F.2d 1332, 1337 (6th Cir.1983)).

#### 1.   Interrelation of Operations

■ Ltd II, is the partnership, formed under a July 25, 1990 partnership agreement ("Partnership Agreement"), that owned all the stock of the Lodge and Inn and the building in which they operated from July 25, 1990, until it was dissolved in December, 1994. The partners of Ltd. II were the Estate and W & K. The Estate was the managing partner of Ltd. II. When the partnership was dissolved, all of its assets were transferred to the Estate.

The Estate has the authority to carry on, control, and administer the business of the Lodge and Inn. The Estate was managed by its co-executors, George Wiegel, Jr. ("Ted Wiegel") and Anne Boyd, for the beneficiaries: Anne Wiegel, Ted Wiegel, and Anne Boyd.[1] Neither of the executors could take any action on behalf of the Estate without the approval of the other.

W & K was wholly owned by the Estate from the time of George E. Wiegel, Sr.'s death until it was dissolved in December, 1994.

There is little evidence that the Lodge and Inn had common offices, common record keeping, and shared bank accounts and equipment with Ltd. II, the Estate, or W & K. However, the Estate, Ltd. II, the Lodge, and the Inn only conducted one business, and

---

**1.** Anne Boyd and Ted Wiegel are brother and    sister and Anne Wiegel is their mother.

that is the running of the Holiday Inn. Under the Partnership Agreement, Ltd. II was created to own all of the operating assets related to the Holiday Inn and to operate the Holiday Inn. Partnership Agreement ¶¶ 1, 6. Upon its dissolution, all the assets passed to the Estate. Ltd. II and the Estate engaged in no other business other than the operation of the Holiday Inn. Therefore, their operations are not just interrelated to that of the Inn and the Lodge, they are one and the same. *See NLRB v. International Measurement & Control Co.*, 978 F.2d 334 (7th Cir. 1992) (finding that one family used three corporations and two partnerships to operate different aspects of once electronic-controls enterprise).

### 2. Common management, common directors and boards

The day-to-day operations of the Lodge are run by the General Manager and the day-to-day operations of the Inn are run by the Food and Beverage Manager, who reports to the General Manager. During most of the relevant period of time, the General Manager was Davis Boyd and the Food and Beverage Manager was Anne Boyd, his wife. The directors of the Lodge and Inn were Anne Wiegel, Ted Wiegel, and her son-in-law, Davis Boyd. All of the stock in the Lodge and Inn was owned by Ltd. II until it was dissolved in 1994, when it passed to the Estate.

Ltd. II was a partnership, with its two partners being the Estate, which owned 77% of Ltd. II, and W & K, which owned the remaining 23%. Anne Boyd and Davis Boyd made the decisions for Ltd. II.

W & K was wholly-owned by the Estate. The directors of W & K were Ted Wiegel, Anne Wiegel, and Davis Boyd. Ted Wiegel, Davis Boyd, and Vicki Witkowski were the three employees of W & K.

The Estate was managed by its co-executors, Ted Wiegel and Anne Boyd. All of the decisions for the Estate had to be decided jointly.

To summarize, the Wiegel/Boyd family managed or otherwise controlled every entity that had an interest in the Lodge and Inn. Thus, there is clearly common management and common boards and directors.

### 3. Centralized Control of Labor Relations and Personnel

As indicated earlier, the Seventh Circuit has stated that this is the most important factor in determining whether or not the Inn, the Lodge, Ltd. II, the Estate, and W & K are a single employer. *Rogers*, 7 F.3d at 582. To prove this factor, there must be evidence that Ltd. II or the Estate or W & K controlled the day-to-day employment decisions of the Inn and the Lodge. *Rittmeyer v. Advance Bancorp*, Inc., 868 F.Supp. 1017, 1023 (N.D.Ill.1994).

It is undisputed that Ltd. II was created to hold the assets of the Holiday Inn and to operate the Holiday Inn. The Estate, as managing partner of Ltd. II, had authority to carry on, control, and administer the business of the Holiday Inn. The Estate did not exercise such authority with respect to the day-to-day operations of the Holiday Inn. The Estate delegated such authority to the General Manager, Davis Boyd, and Assistant General Manager, Anne Boyd. They controlled the day-to-day operations, labor relations policies, and any other personnel decisions of the Lodge and Inn.

The same two persons who controlled the day-to-day operations of the Lodge and Inn also controlled Ltd. II.[2] They signed numer-

---

**2.** Ted Wiegel testified at his deposition that Anne Boyd and David Boyd made the decisions for Ltd. II. Wiegel Dep. at 40. In his subsequent declaration, he attempts to contradict this statement by stating that he and W & K managed Ltd. II. Wiegel Decl. ¶ 15. Generally, subsequent contradictory affidavits are not admissible as evidence for summary judgment. *Adelman–Tremblay v. Jewel Cos.*, 859 F.2d 517, 521 (7th Cir.

1988). However, Mr. Wiegel argues that he was confused at the deposition, and thus the affidavit clarifies the testimony and does not contradict it. The deposition does not indicate that Mr. Wiegel was confused. Mr. Wiegel answered numerous questions about Ltd. II, illustrating that he understood the workings of Ltd. II. Wiegel Dep at 37–40. Thus, the EEOC's motion to strike the

ous checks on behalf of Ltd. II for the Holiday Inn, including checks for the mortgage, insurance, taxes, painters, carpet cleaners, accountants, attorneys' fees relating to discrimination charges, and lawsuit settlements. Davis Boyd made several loans to Ltd. II. Ltd. II was just another business entity, managed by the Boyds, without any employees, that was used to run part of the the Lodge and Inn. Thus, Ltd. II (and later the Estate) and the Lodge and Inn should be considered a single employer under this prong.

### 4. Common Ownership and Financial Control

Since at least August 1990, the Estate has owned (directly or indirectly) all interests in the operating assets of the Holiday Inn. From July 25, 1990 until the end of 1994, the Estate owned the Holiday Inn through Ltd. II. It directly owned approximately 77% of Ltd. II and owned 100% of the stock of the other partner in Ltd. II—W & K. Ltd. II owned the land and all physical assets used to run the Holiday Inn, all of the stock of the Lodge and Inn and it also held the rights under the franchise agreement to operate the Holiday Inn. After Ltd. II was dissolved in 1994, the Estate directly owned all of the interests in the operating assets Holiday Inn. Thus, there is common ownership among all the different entities in this case.

It is also clear that the persons who exercised financial control over the Lodge and the Inn were the same persons who exercised financial control over Ltd. II. Anne Boyd and Davis Boyd operated the Lodge and the Inn. They were also the ones who signed the checks for Ltd. II, either together, or individually with Ted Wiegel's signature.

### Conclusion

After evaluating the four factors, I find that the EEOC has demonstrated that Ltd. II, the Estate (now Trusts), and the Lodge and Inn are essentially a single employer. Thus, the EEOC's motion for summary judgment is granted and the defendants will not

third sentence of paragraph 15 of the Wiegel

be dismissed for lack of subject matter jurisdiction.

Declaration is granted.