United States Court of Appeals,

Fifth Circuit.

No. 96-11278.

Roger W. LUSK, et al., Plaintiffs,

Roger W. Lusk;  Robert P. Griffith;  Herbert Barton, Jr.;  Joseph Sanderson;  Clinton B. Maddox, II;  Joe J. Wilkie;  Darrell Schwonke;  Michael J. Kearney, Plaintiffs-Appellants,

v.

FOXMEYER HEALTH CORPORATION, formerly known as National Intergroup, Inc., et al., Defendants,

Foxmeyer Health Corporation, formerly known as National Intergroup, Inc., Defendant-Appellee.

Dec. 4, 1997.

Appeal from the United States District Court for the Northern District of Texas.

Before JOLLY, SMITH and DENNIS, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

In this appeal, we are presented the question whether a parent corporation may be held liable for the allegedly discriminatory conduct of its subsidiary.  Eight former employees of the FoxMeyer Drug Company ("FoxMeyer Drug") were terminated as a result of a reduction-in-force.  They brought this action alleging age discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621-34.  They also sued FoxMeyer Drug's parent corporation, the FoxMeyer Corporation, and FoxMeyer Corporation's parent, National Intergroup, Inc. ("NII").[1]   NII

---

[1]In October 1994, NII changed its name from National Intergroup, Incorporated to FoxMeyer Health Corporation, and in January 1997, changed its name again to Avatex Corporation. Because NII was operating under the National Intergroup name during the relevant time period of this suit, it will be referred to as NII throughout this opinion.

moved for summary judgment contending that it did not qualify as an "employer" in the matters relating to this case and, therefore, was not subject to suit under the ADEA. The district court granted NII's motion and dismissed the action against NII. On appeal, the plaintiffs-appellants argue that the district court erred in finding no genuine issue of material fact as to whether FoxMeyer Drug, FoxMeyer Corporation, and NII constituted a "single employer" under the ADEA. We affirm.

I

All of the appellants were employed as sales consultants in FoxMeyer Drug's various regional offices. FoxMeyer Drug purchases health care products directly from manufacturers. It then distributes health care products and services to retail establishments such as pharmacies and drug store chains, as well as to other health care providers such as hospitals and university medical centers. FoxMeyer Drug is a wholly-owned subsidiary of the FoxMeyer Corporation, a holding company with no employees, but which shares the same board of directors and same executive officers with FoxMeyer Drug.

The FoxMeyer Corporation is, in turn, a wholly-owned subsidiary of the appellee, NII. NII, also a holding company, employs approximately fifteen people and is affiliated as a parent or subsidiary with nearly forty other corporations. NII shares its corporate headquarters with FoxMeyer Drug and FoxMeyer Corporation (collectively, the "FoxMeyer subsidiaries") in Carrollton, Texas. During the period relevant to this lawsuit, two individuals—Melvyn Estrin and Abbey Butler—served as both Co-Chairmen and Co-CEOs of

all three corporations. In addition, evidence indicated that a third individual, Thomas Anderson, held positions of President and Chief Operating Officer with all three corporations.[2]

In October 1993, Mike Webster, Senior Vice President of Sales and Marketing of FoxMeyer Drug and FoxMeyer Corporation, had discussions with Estrin and Butler about FoxMeyer Drug's financial performance and its ability to serve its customers more efficiently and productively. As a result of these discussions, Webster ordered senior executive officers of FoxMeyer Drug and FoxMeyer Corporation to form a planning team (the "Planning Team") to reengineer FoxMeyer Drug's sales force and determine criteria for selecting employees for discharge. The Planning Team formed a reduction-in-force plan (the "RIF plan"), which was approved by Estrin, Butler, and Anderson, presented to retail sales supervisors for FoxMeyer Drug, and then executed at the local level in January 1994.

The appellants—all FoxMeyer Drug sales consultants terminated as a result of the RIF plan—filed suit on August 26, 1994, against FoxMeyer Drug, FoxMeyer Corporation, and NII. They alleged that the three corporations engaged in unlawful discrimination under the

---

[2]The parties hotly contest whether Anderson held these positions during the relevant time periods, each pointing to evidence (including, on NII's part, some evidence not part of the summary judgment record) supporting their respective positions. When reviewing decisions on summary judgment, however, we do not assess the probative value of evidence or resolve factual disputes. *Stine v. Marathon Oil Co.,* 976 F.2d 254, 265 (5th Cir.1992). For purposes of this appeal, we assume that Anderson held positions with NII as well as FoxMeyer Drug and FoxMeyer Corporation throughout the relevant time periods. *See Martin v. John W. Stone Oil Distrib., Inc.,* 819 F.2d 547, 548 (5th Cir.1987) (reasonable doubts about facts are resolved in favor of nonmovant on summary judgment).

ADEA by directing lower level managers to consider age as a factor in determining which employees to discharge. On June 7, 1996, after extensive discovery, NII moved for summary judgment on the grounds that it did not directly employ the appellants and, therefore, did not qualify under the ADEA as a "single employer" with its FoxMeyer subsidiaries. Less than two months later, and six days before trial, FoxMeyer Drug and FoxMeyer Corporation filed for bankruptcy in Delaware. Consequently, the district court stayed further proceedings against those two defendants.

Thereafter, on September 9, 1996, the district court granted NII's motion for summary judgment. Examining the evidence in the light of the four-factor test enunciated in *Trevino v. Celanese Corp.,* 701 F.2d 397 (5th Cir.1983), the court held that NII and its FoxMeyer subsidiaries did not constitute a single employer. In particular, the district court determined that, although the three corporations had common ownership and some common management, there was no evidence demonstrating NII's involvement in the daily operations or labor relations of its FoxMeyer subsidiaries. The court grounded this determination on the absence of evidence showing that Estrin, Butler, and Anderson had responsibility in planning and implementing the details of the RIF plan. Thus, the court concluded, the appellants failed to identify evidence sufficient to permit a finding that NII was a final decision-maker in their termination and, consequently, that NII and its FoxMeyer subsidiaries could be regarded as a single, integrated enterprise for purposes of this case.

This appeal presents the sole issue of whether the summary

judgment evidence would permit a finding that NII and its FoxMeyer subsidiaries qualify as a single employer under the ADEA.

## II

We review the district court's grant of summary judgment *de novo*. *Exxon Corp. v. Baton Rouge Oil,* 77 F.3d 850, 853 (5th Cir.1996). The court will not weigh the evidence or evaluate the credibility of witnesses; further, all justifiable inferences will be made in the nonmoving party's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513-14, 91 L.Ed.2d 202 (1986). If, as here, the nonmoving party bears the burden of proof at trial, the moving party may demonstrate that it is entitled to summary judgment by submitting affidavits or other similar evidence negating the nonmoving party's claim, or by pointing out to the district court the absence of evidence necessary to support the nonmoving party's case. *Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167, 178 (5th Cir.1990).

Once the moving party presents the district court with a properly supported summary judgment motion, the burden shifts to the nonmoving party to show that summary judgment is inappropriate. *Id.* In doing so, the nonmoving party may not rest upon the mere allegations or denials of its pleadings, and unsubstantiated or conclusory assertions that a fact issue exists will not suffice. *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. Rather, the nonmoving party must set forth specific facts showing the existence of a "genuine" issue concerning every essential component of its case. *Thomas v. Price,* 975 F.2d 231, 235 (5th Cir.1992). That is, the nonmoving party must adduce evidence sufficient to support a

jury verdict. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. With these standards in mind, we turn to the merits of this appeal.

III

Under the ADEA, a corporation like NII cannot be held liable for discriminatory employment actions unless it qualifies as an "employer" under the statute. *See* 29 U.S.C. § 623. The ADEA defines an employer only as "a person engaged in industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 29 U.S.C. § 630(b). This statutory definition provides little assistance in resolving the question before us. It plainly contains no basis for disregarding the venerable corporate law principle of limited liability or for otherwise extending liability to a parent corporation for the discriminatory acts of its subsidiary. We, and other courts, however, have construed the term "employer" broadly to include superficially distinct entities that are sufficiently interrelated to constitute a single, integrated enterprise. *See, e.g., Schweitzer v. Advanced Telemarketing Corp.,* 104 F.3d 761, 764 (5th Cir.1997); *Rogers v. Sugar Tree Products, Inc.,* 7 F.3d 577, 582 (7th Cir.1993); *Johnson v. Flowers Indus., Inc.,* 814 F.2d 978, 981 (4th Cir.1987); *York v. Tennessee Crushed Stone Ass'n,* 684 F.2d 360, 362 (6th Cir.1982).

To determine whether a parent corporation and its subsidiary may be regarded as a "single employer" under the ADEA, we apply the four-part analysis originally adopted by the Supreme Court in the context of labor disputes, *see Radio Union v. Broadcast Serv.,* 380 U.S. 255, 257, 85 S.Ct. 876, 877, 13 L.Ed.2d 789 (1965), and

extended to civil rights actions by this court in *Trevino v. Celanese Corp.,* 701 F.2d 397 (5th Cir.1983). The four factors to consider include: (1) interrelation of operations, (2) centralized control of labor or employment decisions, (3) common management, and (4) common ownership or financial control. 701 F.2d at 404. This analysis ultimately focuses on the question whether the parent corporation was a final decision-maker in connection with the employment matters underlying the litigation, *id.; Chaiffetz v. Robertson Research Holding, Ltd.,* 798 F.2d 731, 735 (5th Cir.1986), and all four factors are examined only as they bear on this precise issue, *see Schweitzer,* 104 F.3d at 765.[3]

Although the appellants produced evidence establishing common management and ownership between NII and its FoxMeyer subsidiaries, these factors alone are insufficient to establish single employer status. The doctrine of limited liability creates a strong

---

[3]Courts adopting a broad definition of the term "employer" have done so based on the significant remedial public policy underlying the anti-discrimination laws. *See, e.g., Baker v. Stuart Broadcasting Co.,* 560 F.2d 389, 391 (8th Cir.1977). While we support this reasoning, we also are mindful that "the doctrine of limited liability was originally formulated ... to implement *both* economic and democratic goals" and that approaches to piercing the corporate veil which fail to recognize these important public policy considerations underlying the doctrine "are deficient." Stephen B. Presser, *Piercing the Corporate Veil* § 1.01, at 4, § 1.06, at 71-72 (1997) (emphasis in original). Accordingly, before piercing the corporate veil in the employment discrimination context, we and other courts have focused on the core activities regulated by the anti-discrimination laws and, therefore, on whether the parent corporation was so involved in the daily employment decisions of the subsidiary as to justify treating the two corporations as a single employer. *See, e.g., Schweitzer,* 104 F.3d at 765; *Cook v. Arrowsmith Shelburne, Inc.,* 69 F.3d 1235, 1241 (2d Cir.1995); *Evans v. McDonald's Corp.,* 936 F.2d 1087, 1090 (10th Cir.1991); *Sheeran v. American Commercial Lines, Inc.,* 683 F.2d 970, 978 (6th Cir.1982); *Mochelle v. J. Walter, Inc.,* 823 F.Supp. 1302, 1306 (M.D.La.1993), *aff'd,* 15 F.3d 1079 (5th Cir.1994).

presumption that a parent corporation is not the employer of its subsidiary's employees. *Frank v. U.S. West, Inc.,* 3 F.3d 1357, 1362 (10th Cir.1993) (citing *Johnson,* 814 F.2d at 980); *see also Krivo Indus. Supply Co. v. National Distillers & Chem. Corp.,* 483 F.2d 1098, 1102 (5th Cir.1973) (corporate form is not disregarded lightly since the law created corporations primarily to allow limited liability). Only evidence of control suggesting a significant departure from the ordinary relationship between a parent and its subsidiary—domination similar to that which justifies piercing the corporate veil—is sufficient to rebut this presumption, *see Johnson,* 814 F.2d at 981, and to permit an inference that the parent corporation was a final decision-maker in its subsidiary's employment decisions.

Common management and ownership are ordinary aspects of a parent-subsidiary relationship. A parent corporation's possession of a controlling interest in its subsidiary entitles the parent to the normal incidents of stock ownership, such as the right to select directors and set general policies, without forfeiting the protection of limited liability. *Baker v. Raymond Int'l, Inc.,* 656 F.2d 173, 180-81 (5th Cir.1981). Thus, courts have recognized that the mere existence of common management and ownership are not sufficient to justify treating a parent corporation and its subsidiary as a single employer. *See, e.g., Frank,* 3 F.3d at 1364; *Rogers,* 7 F.3d at 583; *Johnson,* 814 F.2d at 980-82. Some nexus to the subsidiary's daily employment decisions must be shown. *See Schweitzer,* 104 F.3d at 765.

The appellants argue that they established this nexus with

evidence of interrelated operations and NII's involvement in the RIF plan. The interrelation of operations element of the single employer test ultimately focuses on whether the parent corporation excessively influenced or interfered with the business operations of its subsidiary, that is, whether the parent *actually exercised* a degree of control beyond that found in the typical parent-subsidiary relationship. *Johnson,* 814 F.2d at 981-82; *see also Herman v. United Bhd. of Carpenters & Joiners of Am., Local Union No. 971,* 60 F.3d 1375, 1383-84 (9th Cir.1995); *Rogers,* 7 F.3d at 582; *Armbruster v. Quinn,* 711 F.2d 1332, 1338 (6th Cir.1983). Thus, for example, the fact that NII (like any other parent corporation) ultimately benefitted from the activities of its subsidiaries, including the restructuring of FoxMeyer Drug's sales force, is irrelevant to whether their operations were interrelated. *See Frank,* 3 F.3d at 1362; *Rittmeyer v. Advance Bancorp, Inc.,* 868 F.Supp. 1017, 1022 (N.D.Ill.1994). "Attention to detail," not general oversight, is the hallmark of interrelated operations. *See Johnson,* 814 F.2d at 982.

Along these lines, relevant factors suggesting the existence of interrelated operations include evidence that the parent: (1) was involved directly in the subsidiary's daily decisions relating to production, distribution, marketing, and advertising; (2) shared employees, services, records, and equipment with the subsidiary; (3) commingled bank accounts, accounts receivable, inventories, and credit lines; (4) maintained the subsidiary's books; (5) issued the subsidiary's paychecks; or (6) prepared and

filed the subsidiary's tax returns.[4]  *See, e.g., Cook v. Arrowsmith Shelburne, Inc.,* 69 F.3d 1235, 1241 (2d Cir.1995);  *Johnson,* 814 F.2d at 981-82;  *Armbruster,* 711 F.2d at 1338;  *Harris v. Palmetto Tile, Inc.,* 835 F.Supp. 263, 268 (D.S.C.1993);  *Greason v. Southeastern R.R. Assoc. Bureaus,* 650 F.Supp. 1, 4 (N.D.Ga.1986), *aff'd,* 813 F.2d 410 (11th Cir.1987);  *Fike v. Gold Kist, Inc.,* 514 F.Supp. 722, 726-27 (N.D.Ala.), *aff'd,* 664 F.2d 295 (11th Cir.1981).

There is no such evidence in this case.  Although the appellants allege that all FoxMeyer entities shared the same human resources department and employment grade system, their record cite fails to support these assertions.[5]  The deposition of Derek Van Keuren, Director of Human Resources, refers to his department as an arm of FoxMeyer Drug, not NII or FoxMeyer Corporation.  He makes no reference to services performed for NII or its employees.  In short, his deposition fails to support an inference that NII and its FoxMeyer subsidiaries were functionally integrated.[6]

---

[4]This is not to say, of course, that the existence of any of these factors is alone dispositive of single employer status or even a finding of interrelated operations.

[5]This unsupported citation is not an isolated incident. Because this case involves corporate entities all using the term "FoxMeyer" in their names at some point, *see supra* note 1, loose references to "FoxMeyer" in the record make context particularly important.  Numerous passages in the record and district court opinion, if taken out of context, create ambiguity as to which entity they refer.  On more than one occasion, the appellants appear to rely on such vagaries to implicate NII in various aspects of this case.  Such citations do little to boost credibility or arguments before this court.

[6]The portion of the record cited by the appellants does not even support an inference that Van Keuren's department had any significant connection to FoxMeyer Corporation, much less NII. It suggests that recordkeeping and nearly all personnel decisions were

Similarly, the appellants' reliance on the fact that letters of termination and other RIF-related memoranda bore the "FoxMeyer" letterhead and uniformly listed the address shared by the corporate headquarters of NII and its FoxMeyer subsidiaries is misplaced. Although NII in fact operated under the "FoxMeyer Health Corporation" title at one time, it did not assume this title until over nine months *after* the events relevant to this lawsuit occurred. Instead, NII was operating under the "National Intergroup Incorporated" name at the time the appellants were terminated. Thus, RIF materials bearing the "FoxMeyer" letterhead say nothing of NII's involvement in the RIF or the operations of its FoxMeyer subsidiaries.

The appellants' principal argument, however, is that the explicit and knowing approval of the RIF plan by Anderson, Butler, and Estrin necessarily creates a fact issue concerning interrelation of operations between NII and its subsidiaries. The appellants maintain that because these three individuals held positions at the highest level of NII's corporate structure, their involvement in the RIF plan may be imputed to NII. This argument must be considered in the light of the well established principle that directors and officers holding positions with a parent and its subsidiary can and do "change hats" to represent the two corporations separately, despite their common ownership. *United States v. Jon-T-Chem., Inc.,* 768 F.2d 686, 691 (5th Cir.1985), *cert. denied,* 475 U.S. 1014, 106 S.Ct. 1194, 89 L.Ed.2d 309 (1986).

made at FoxMeyer Drug's local human resources offices, not by Van Keuren's department.

Thus, the appellants must point to evidence that, when Anderson, Butler, and Estrin approved the RIF plan, they were acting in their capacity as officers of NII. *See Greason,* 650 F.Supp. at 5 (failure to adduce evidence of which entity the common decision-maker represented required summary judgment on single employer issue), *aff'd,* 813 F.2d 410 (11th Cir.1987).

When pressed at oral argument to identify evidence in the record from which we could reasonably infer that Anderson, Butler, and Estrin were acting on NII's behalf in approving the RIF plan, the appellants made two basic arguments. First, they urged us to draw the inference from the sheer magnitude of the employment decision involved; that it is reasonable to expect such a decision to be made at the highest level of the corporate family. Second, the appellants argued that the inference is justified on the basis of NII's shared use of a single building and phone number for its corporate headquarters and those of its FoxMeyer subsidiaries.

Although we examine the record in the light most favorable to the appellants, we do not do so in bits and pieces, but as a whole. On summary judgment, we consider the totality of the facts and make only reasonable, justifiable inferences from that evidence. *Knight v. Sharif,* 875 F.2d 516, 523 (5th Cir.1989) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). The factual context of a party's claim may render it implausible for purposes of creating a genuine dispute of fact. *Id.; see also First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 280, 88 S.Ct. 1575, 1588, 20 L.Ed.2d 569 (1968).

Circumstances surrounding the development and execution of the RIF plan show nothing more than that Anderson, Butler, and Estrin were acting as officers of FoxMeyer Drug and FoxMeyer Corporation. Based on the appellants' rendition of the facts, it appears that on every occasion in which these three individuals took any action in connection with the RIF plan, they were acting in concert only with other FoxMeyer Drug or FoxMeyer Corporation officials. In fact, the record is replete with examples of how executives from FoxMeyer Drug and FoxMeyer Corporation, most of whom shared positions with both companies, devised and implemented every aspect of the RIF plan. The plan affected only FoxMeyer Drug employees.[7] It is true that Anderson, Butler, and Estrin approved the plan, but that unadorned fact tells us nothing more than that they were acting as the three highest ranking executives at FoxMeyer Drug.

On the other hand, evidence of NII's involvement in the RIF plan is scant. Presumably, Anderson, Butler, and Estrin were not NII's only officers or directors, yet the appellants point us to no evidence that these three ever sought approval from or even consulted anyone else in the NII organization. As a matter of law, whether as officers or directors of NII, Anderson, Butler, and Estrin had no power to act on NII's behalf unless acting within the scope of their authority, or as part of a legally convened board of directors. *See Kiepfer v. Beller,* 944 F.2d 1213, 1218 (5th Cir.1991) ("a director exercises his office only through the collective action of the board of which he is a member");

---

[7]None of the individuals affected by the RIF were employed by FoxMeyer Corporation, much less NII.

*Vicksburg Furniture Mfg., Ltd. v. Aetna Cas. & Sur. Co.,* 625 F.2d 1167, 1170 (5th Cir. Unit A 1980) (officer's acts not authorized by shareholders will not be charged to the corporation); 2 Fletcher, *Cyclopedia of the Law of Private Corporations* §§ 392, 434, at 261, 339-40 (1990). The record, however, is silent on these issues.

Furthermore, the record demonstrates, without contradiction, that NII is only a holding company with no involvement in or control over the daily wholesale drug operations or labor relations of FoxMeyer Drug or FoxMeyer Corporation. NII is affiliated as a parent or subsidiary with nearly forty other corporations. Its only employees, numbering no more than fifteen, are responsible solely for servicing, maintaining, and flying NII's corporate airplane. Thus, the record supports only the inference that, while involved in the RIF plan, Anderson, Butler, and Estrin were acting in their capacities as directors and officers of the FoxMeyer subsidiaries, not NII.

In sum, the appellants are left with evidence only that NII and its FoxMeyer subsidiaries shared the same corporate headquarters, which used a common primary phone number. Such facts are indeed evidence of interrelated operations. *See Mochelle,* 823 F.Supp. at 1305, *aff'd,* 15 F.3d 1079 (5th Cir.1994); *but see Walker v. Toolpushers Supply Co.,* 955 F.Supp. 1377, 1382 (D.Wyo.1997) (sharing common location, alone, is not sufficient evidence of interrelated operations). Common headquarters and telephone number are not, however, the type of evidence from which a reasonable jury could infer that Anderson, Butler, and Estrin were acting for NII when they approved the RIF plan.

As for evidence of NII's control or influence over the labor or employment decisions of its FoxMeyer subsidiaries, the appellants advance the same argument they tendered on the issue of interrelated operations.[8] The appellants contend that we may infer NII's control of labor and employment decisions from the fact that Anderson, Butler, and Estrin approved the RIF plan. We reject this argument for the same reason we rejected it earlier. The appellants simply have pointed us to no evidence from which we may reasonably infer that these individuals were acting on NII's behalf when involved in the RIF plan.

The appellants argue that our decision in *Trevino* necessitates a finding of centralized labor and employment decisions in this case. We disagree. In *Trevino,* the court reversed a grant of summary judgment, finding a genuine fact issue concerning whether a parent corporation and its subsidiary exhibited centralized employment decisions. *See* 701 F.2d at 404. The basis of the court's decision was the existence of over a hundred documents, signed by the parent's managers, authorizing lay-offs, recalls, promotions, and transfers of the subsidiary's employees. *Id.* No such evidence exists here.

Moreover, *Trevino* did not involve a situation where the individuals making the employment decisions held positions with both the parent and subsidiary. The decision-makers clearly were the managers and supervisors of the parent corporation and not the

---

[8]Suitable evidence of centralized labor and employment decisions includes parental control of hiring, firing, promoting, paying, transferring, or supervising employees of the subsidiary. *Johnson,* 814 F.2d at 982.

subsidiary.  *See id.* at 400.  Thus, in *Trevino,* there was never any question whether the decision-makers were acting on behalf of the parent or its subsidiary.[9]  In contrast, the absence of evidence from which we may reasonably infer that Anderson, Butler, and Estrin were acting on NII's behalf dooms the appellants' argument for single employer status in this case.

IV

In conclusion, we hold that the appellants failed to produce evidence sufficient to withstand summary judgment in this case. The evidence of common management and ownership between NII and its FoxMeyer subsidiaries, taken together with their shared use of a common headquarters building and main telephone number, does not permit an inference that NII is responsible for the decision to terminate employees of FoxMeyer Drug. This conclusion is supported by uncontradicted evidence that NII was nothing more than a holding company with no involvement in or control over the daily operations or employment decisions of its FoxMeyer subsidiaries.  Accordingly, the judgment of the district court is

AFFIRMED.

---

[9]For the same reasons, *Cook v. Arrowsmith Shelburne, Inc.,* 69 F.3d 1235 (2d Cir.1995), fails to address the issues presented by this case.  In *Cook,* the court never considered whether common managers, if any, were acting on behalf of the parent or the subsidiary.  Its holding was based specifically on findings that management from the parent ran its subsidiary's operations in a "direct, hands-on fashion," that all personnel status reports were approved by the parent, and that applications for employment with the subsidiary went through the parent.  *Id.* at 1241.  The appellants have introduced no such evidence is this case.