**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 23, 2009

Charles R. Fulbruge III
Clerk

No. 08-30984
Summary Calendar

SHARLENE PARKER

Plaintiff - Appellant

v.

STATE OF LOUISIANA DEPARTMENT OF EDUCATION SPECIAL
SCHOOL DISTRICT

Defendant - Appellee

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:07-CV-369

Before JOLLY, BENAVIDES, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Plaintiff - Appellant Sharlene Parker appeals the district court's grant of summary judgment in favor of Defendant - Appellee Louisiana Department of Education Special School District ("the DOE"). Because we find that Parker has not produced sufficient evidence to survive summary judgment on her claim that the DOE created a hostile work environment, we affirm the district court's grant

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

of summary judgment on that claim. Because we conclude that Parker raised a fact issue on her claims of termination based upon race and retaliation, we reverse the grant of summary judgment on those claims. Because of this reversal, we reverse the concomitant grant of attorney's fees and, thus, need not reach the question of whether awarding attorney's fees to the DOE without first finding that Parker's claims were frivolous, unreasonable, without foundation, or made in bad faith was error. Therefore, we AFFIRM in part and REVERSE and REMAND in part.

## BACKGROUND

Parker is an African-American woman who was employed by the DOE from November 8, 2004 through June 23, 2006 as a special education teacher at Dixon Correctional Institute ("DCI"). She filed this suit on May 28, 2007 alleging that the DOE fired her based upon her race, fired her in retaliation for her complaints about discriminatory treatment, and created a hostile work environment.

Parker alleges the following facts: On February 20, 2006, Parker and one of her African-American co-workers, Kanisha Jimison, met with Parker's immediate supervisor, Roger James, and another of her supervisors, Anne-Marie Leblanc, both of whom are white, to question them about preferential treatment that a new white co-employee had been receiving. Specifically, Parker and Jimison complained that they were expected to complete work that was assigned to the new employee, Carla Bigham, and that they were required to "walk through a line-up of prisoners," which Bigham was not required to do. Parker contends that her supervisors became "upset" during that meeting and told Jimison to "shut up."

Parker also alleges that, on March 20, 2006, she met with James and Leblanc again and was told at that time that she would have to move her classroom to another building, where the classroom would be shared by both

regular education inmates and Parker's special education inmates. Parker contends that she tried to question James about the legality of special education students being housed with regular education students and asked him to put in writing his instruction about moving classrooms. She asserts that Leblanc "kept interrupting" her during that meeting to advise that she felt Parker was "being insubordinate" by asking her questions. Parker alleges that she asked James to meet with her privately, but he refused.

On March 21, 2006, Parker reported for work but then left in order to attend a scheduled training class. Upon returning to work on March 24, 2006, Parker found that her materials had been moved to Leblanc's office, and according to Parker, security personnel told her that she was not allowed into the office unless Leblanc was present. Parker contends that she was therefore unable to get to her materials to complete a lesson plan that James expected to receive on March 24, 2006. Parker alleges that, although she sent James a request for an extension explaining why she could not timely complete the lesson plan, James refused to accept that request because it was not faxed from Leblanc's fax machine in accordance with a prior directive of James.

Finally, Parker testified that, following a meeting in Leblanc's office on March 31, 2006, she inadvertently left her security beeper on Leblanc's desk. According to Parker, in her experience, whenever a beeper was found, security personnel simply returned it to the teacher. However, she alleges that when security personnel advised Leblanc that the beeper belonged to Parker, Leblanc said she "would take care of it." Later, the security claimed to have found the beeper in the "teacher's planning area," to which inmates have access and which is right next to Leblanc's office. According to Parker's amended complaint, the security guard "wrote [her] up" for the beeper incident. LeBlanc then reported this incident to Deputy Warden Lorena, who then banned Parker from the DCI facility, asserting that she posed a security threat. Because Parker was unable

to report to work due to the ban, she was placed on administrative leave by the DOE from April 4, 2006 through June 23, 2006. When the ban was not lifted, she was terminated on June 23, 2006. She contends that the DOE never conducted an investigation and that she was never contacted by the DOE about the reported incidents prior to her termination.

On March 14, 2008, the DOE filed a motion for summary judgment. In that motion, the DOE asserted that Parker's suit should be dismissed on the following grounds: (1) her hostile work environment claim was insufficient as a matter of law; (2) her reports of alleged harassment by the DOE did not cause her termination; (3) she failed to exhaust her administrative remedies; (4) she failed to report the alleged harassment to the DOE in accordance with its policies; (5) she was not terminated by the DOE because of her race; and (6) punitive damages are not available in suits against a state entity, such as the DOE. The DOE also asserted that it was entitled to an award of attorney's fees if it prevailed on its motion, pursuant to 42 U.S.C. § 2000e-5(k). In her opposition to the DOE's summary judgment motion, Parker conceded that punitive damages were unavailable against the state and withdrew that claim for relief; however, she asserted that all of the DOE's other arguments lacked merit.

The motion was first considered by a magistrate judge, who recommended that the motion be granted because the conduct complained of was not sufficiently severe or pervasive as to constitute a hostile work environment and there was no evidence that Parker's termination resulted from her race or was in retaliation of complaints about preferential treatment of a white employee. The magistrate judge also recommended that the DOE be awarded its attorney's fees as a prevailing party under Title VII. The district court adopted the report and recommendation of the magistrate judge as its opinion. Parker appeals the

district court's grant of summary judgment in favor of the DOE and the award of attorney's fees.

## DISCUSSION

We review a district court's grant of summary judgment de novo, applying the same standards as the district court. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Summary judgment is appropriate when the evidence shows that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

## I. Hostile Work Environment

Parker appeals the district court's grant of summary judgment in favor of the DOE on her hostile work environment claim.

To prevail on a Title VII claim based on a hostile work environment, an employee must prove: "(1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) such harassment was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; [and] (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action." *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002). "[W]here the harassment is allegedly committed by a supervisor with immediate (or successively higher) authority over the harassment victim, the plaintiff employee needs to satisfy only the first four of the elements listed above." *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 353 (5th Cir. 2001).

The district court concluded that Parker failed to produce any competent summary judgment evidence demonstrating that the alleged pattern of conduct by the DOE was severe or pervasive enough to carry her burden of proof under Title VII. "For harassment on the basis of race to affect a term, condition, or privilege of employment . . . it must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working

environment." *Ramsey*, 286 F.3d at 268. A plaintiff "must subjectively perceive the harassment as sufficiently severe or pervasive, and this subjective perception must be objectively reasonable." *Frank v. Xerox Corp.*, 347 F.3d 130, 138 (5th Cir. 2003). "We determine whether a hostile work environment exists using a totality-of-the-circumstances test that focuses on 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating . . . and whether it unreasonably interferes with an employee's work performance.'" *Turner*, 476 F.3d at 347 (ellipsis in original) (quoting *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000)).

As discussed above, Parker contends that she was subjected to a hostile work environment based upon the following acts: (1) she and Jimison were forced to walk through a prisoner line-up, while Bigham was not; (2) she was told she was being "insubordinate" and Jimison was told to "shut up" when they complained during meetings with James and Leblanc; (3) her teaching materials were moved to her supervisor's office; (4) she and Jimison were assigned to complete work tasks for Bigham; and (5) she was placed on administrative leave and ultimately fired.

Drawing all reasonable inferences in Parker's favor, the totality of the circumstances presented do not evidence a level of harassment on the basis of race that affected a term, condition, or privilege of employment. The first three acts complained of by Parker are easily disposed of. Parker offered no evidence as to the nature or frequency of having been forced to walk through a prisoner line-up, thus failing to offer any evidence that the practice was severe or pervasive. Merely being told once that she was being insubordinate and hearing a co-worker being told once to "shut-up" are not sufficiently severe or pervasive to be considered hostile or abusive. It is undisputed that before her teaching materials were moved to her supervisor's office, Parker was told that she would have to move her classroom to a new location but failed to move on her own

accord. The evidence of these three acts, alone or in conjunction with the other acts complained of by Parker, do not support a hostile work environment claim.

It is possible to imagine circumstances where requiring an employee to perform additional work would be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. But Parker failed to offer summary judgment evidence of the specific nature and extent of the additional tasks she was allegedly required to perform for Bigham, how often those tasks were performed, and how performing those tasks interfered with her own work performance. Without this evidence, Parker failed to raise a question of material fact as to whether the additional tasks she was asked to complete to assist Bigham were sufficiently severe or pervasive to be considered hostile or abusive by an objective, reasonable person. Moreover, Bigham was a temporary employee who had only been to DCI five times. Bigham was required to be accompanied at all times because she had not yet attended orientation training. The only tasks Parker describes in her affidavit are the types of activities one would expect in assisting a new co-worker.[1] Parker's proposed rule would make a common practice – asking a more experienced employee to assist a new employee – hostile or abusive. While we view the evidence in the light most favorable to Parker, she is only entitled to "reasonable, justifiable inferences from that evidence." *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 779 (5th Cir. 1997). The evidence of additional tasks offered

---

[1] Parker asserts that she was required to complete Bingham's "evaluation packet, including vision and hearing screenings." She also claims to have been "instructed to go with her to the nurse's station to collect data on the inmates, and to attend sessions with her when she was working with inmates." She also stated that she was required to "complete work that was assigned to the white employee and to escort her on the grounds since the white employee had not received mandatory orientation training." Parker fails to provide any description of the effort required to perform the tasks or the frequency of which she was required to assist Bigham.

by Parker does not create a reasonable inference of a hostile work environment.

As to her termination, while we agree below that she has raised a fact issue on whether it was motivated by improper purpose, it is not a separate incident of a "hostile work environment." Accordingly, the district court properly granted summary judgment on Parker's hostile work environment claim.

## II. Termination

Parker also appeals the district court's grant of summary judgment in favor of the DOE on her claims relating to her termination. Parker claims that she was terminated because of her race, and independently, that she was terminated in retaliation for complaining about preferential treatment of a white employee. The DOE contends, and the district court held, that Parker failed to offer summary judgment evidence that Parker's termination was the result of her race or in retaliation of her complaints about preferential treatment.[2]

The well-established test adopted in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), applies to claims brought under Title VII. To establish a *prima facie* case of race discrimination, a plaintiff must demonstrate that she: (1) is a member of a protected class; (2) is qualified for the position from which she was discharged; (3) suffered an adverse employment action; and (4) was treated less favorably than similarly situated individuals who were not members of her protected class. *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 576 (5th Cir. 2003); *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001). Similarly, "[a] plaintiff establishes a *prima facie* case for

---

[2] Although Parker asserts on appeal that the DOE failed to move for summary judgment on her race based discrimination claim, the DOE's motion for summary judgment stated that Parker was terminated "because she posed a threat to the security of the institution." In the present case, this was sufficient to put Parker on notice that she was required to offer evidence that she was terminated because of her race to avoid summary judgment.

unlawful retaliation by proving (1) that she engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action." *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996).

A plaintiff's *prima facie* case creates an inference of discrimination that shifts the burden of production to the defendant to come forward with evidence that the adverse employment action was taken for a legitimate, nondiscriminatory reason. *Okoye*, 245 F.3d at 513. The burden is one of production, not persuasion, and "can involve no credibility assessment." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). Once the employer articulates a legitimate nondiscriminatory reason and produces competent summary judgment evidence in support of it, the inference created by the *prima facie* case drops out of the picture. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000).

A plaintiff may then attempt to establish that he was the victim of intentional discrimination by offering evidence that the employer's legitimate nondiscriminatory reason is unworthy of belief. *Reeves*, 530 U.S. at 143. The trier of fact may consider the evidence establishing the plaintiff's *prima facie* case and inferences properly drawn from it on the issue of whether the defendant's explanation is pretextual. *Id.*; *Russell*, 235 F.3d at 222-23. Thus, a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated. *Reeves*, 530 U.S. at 147.

Parker asserts that the security beeper incident was merely a pretext for her wrongful termination. Specifically, she asserts that she did not leave her beeper in an area accessible to prisoners, and thus, did not create any security threat warranting her exclusion from the DCI facility. Instead, she states in her affidavit that she "inadvertently left [her] beeper on Ms. LeBlanc's desk," which

was not accessible to prisoners. She also asserts in her affidavit that "when security personnel advised LeBlanc that the beeper belonged to me, LeBlanc said she would take care of it." These statements support an inference that the entire beeper incident was fabricated by LeBlanc to create a pretext for her termination. The summary judgment evidence indicates that the teacher workroom where the beeper was reportedly found was in close proximity to LeBlanc's office, and LeBlanc is the person who decided that the incident should be reported to Deputy Warden Lorena. LeBlanc also is the person in whose office the beeper was left, giving her easy access to it, if she wished to place it in a location that would cause problems for Parker. Deputy Warden Lorena testified that she made the decision to exclude Parker from the DCI facility on the basis of LeBlanc's report. Parker stated in her affidavit that this was not the first incident of a teacher leaving a beeper in an area accessible to prisoners, but that other incidents did not result in the exclusion of the teacher from the DCI facility.

We believe that Parker's statement that she left her security beeper on LeBlanc's desk raises a question of material fact that defeats summary judgment on Parker's termination claims. Contrary to the magistrate judge's report and recommendation, Parker's assertion in her affidavit that she left her beeper on LeBlanc's desk was a statement of fact that we must assume is true for purposes of summary judgment. We are not permitted to make a credibility assessment of the competing stories regarding the beeper incident; this is an issue that must be resolved by a jury. *See Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 436 (5th Cir. 2005) (noting that a district court cannot make credibility determinations or weigh the evidence when deciding a summary judgment motion).

If LeBlanc fabricated the beeper incident to create a pretext for terminating Parker, a jury could reasonably infer that Parker was fired for an

improper purpose.[3] The fact that the ultimate decision to exclude Parker from the DCI facility was made by Deputy Warden Lorena does not sever the potential causal link. LeBlanc is the person who reported the beeper incident to Deputy Warden Lorena, and as discussed above, and there is sufficient evidence to support a reasonable inference that LeBlanc fabricated the evidence relied on to make the decision to exclude Parker. Thus, while Deputy Warden Lorena made the decision to exclude Parker from the DCI facility, there is evidence that LeBlanc improperly influenced that decision. *See Long*, 88 F.3d at 307 (noting that if the final decisionmaker serves as the "cat's paw" of those acting with retaliatory motives, the causal link remains intact).

The DOE's argument that Parker failed to exhaust her termination claims is without merit. Exhaustion occurs when the plaintiff files a timely charge with the EEOC and administrative efforts fail to reach a resolution. *See McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir.), *cert. denied* 129 S. Ct. 198 (2008). "[T]he scope of an EEOC charge should be liberally construed for litigation purposes because Title VII 'was designed to protect the many who are unlettered and unschooled in the nuances of literary draftsmanship.'" *Id.* (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 465 (5th Cir. 1970)). A Title VII complaint may include the allegations contained in the EEOC charge and those that "can reasonably be expected to grow out of the charge of discrimination." *Id.* (quoting *Sanchez*, 431 F.2d at 466). Parker filed an EEOC complaint asserting "I believe I have been discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended, because of my race, Black, my sex, female, and in retaliation for complaining about race and sex discrimination on February 20, 2006." Parker's claims in the present case are

---

[3] The four-month time lapse between this incident and her firing does not negate a finding of pretext, particularly since she was placed on administrative leave relatively soon after this incident.

clearly encompassed by Parker's EEOC charge of discrimination. The DOE's arguments to the contrary border on frivolous.

The DOE also argues that Parker's complaints about discriminatory treatment during the February 20, 2006 meeting were not protected conduct under Title VII because none of the conduct she complained of was unlawful under Title VII. "An employee has engaged in activity protected by Title VII if he has either (1) 'opposed any practice made an unlawful employment practice' by Title VII or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII." *Long*, 88 F.3d at 304 (quoting 42 U.S.C. § 2000e-3(a)); *see also Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1135 (5th Cir. Unit A Sept. 1981) (noting distinction between opposition clause and participation clause). The opposition clause, not the participation clause, is relevant to this case. *See Payne*, 654 F.2d at 1135. "To satisfy th[e] opposition requirement, [Parker] need only show that she had a reasonable belief that the employer was engaged in unlawful employment practices." *Turner*, 476 F.3d at 348 (internal quotations omitted).

In *Payne*, this Court addressed the issue "whether proof of an actual unlawful employment practice is necessary under the opposition clause, or whether an employee is protected from retaliation under the opposition clause if the employee reasonably believes that the employer is engaged in unlawful employment practices." 654 F.2d at 1138. This Court decided the latter, holding that "a plaintiff can establish a *prima facie* case of retaliatory discharge under the opposition clause of section 704(a) if he shows that he had a reasonable belief that the employer was engaged in unlawful employment practices." *Id*. at 1140.

In the present case, Parker asserts that she complained during the February 20, 2006 meeting that the DOE was discriminating against her as a result of her race. The DOE did not assert in its motion for summary judgment

that its treatment of Parker before she was terminated was not the result of Parker's race, it only asserts that Parker failed to offer sufficient evidence of the severity and pervasiveness of the alleged conduct. On the record before us, we must assume that Parker did have a reasonable belief that her treatment was discriminatory. At a minimum, Parker has created a question of material fact concerning the objective reasonableness of her belief that the DOE was engaged in an unlawful employment practice. *See Long*, 88 F.3d at 305. That we conclude that Parker failed to offer evidence that the conduct complained of created a hostile work environment does not alter our analysis. *See Long*, 88 F.3d at 304-09 (affirming summary judgment in favor of defendant on hostile work environment claims but reversing summary judgment on retaliation claims).

## III.   The DOE's Attorney's Fees

Parker also appeals the award of attorney's fees to the DOE. The district court, acting on the magistrate judge's recommendation, awarded the DOE its attorney's fees pursuant to 42 U.S.C. § 2000e-5(k). The district court's award was based upon the fact that the DOE was the prevailing party. By our decision today, the DOE is no longer the prevailing party on a large portion of Parker's claims. Thus, the award of attorney's fees, at this point, is inappropriate and should be reversed. As a result, we need not reach the question of whether such an award would have been appropriate had we affirmed the district court's judgment in full.

### CONCLUSION

For the foregoing reasons, the district court's judgment is AFFIRMED as to the grant of summary judgment on Parker's claim of a hostile work environment. In all other respects, the judgment is REVERSED and REMANDED for proceedings consistent with this opinion.