# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 11, 2023

Lyle W. Cayce
Clerk

No. 22-20267
Summary Calendar

---

Joseph Z. Morkos,

*Plaintiff—Appellant*,

*versus*

DNV GL USA, Incorporated,

*Defendant—Appellee*.

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:18-CV-2037

---

Before King, Higginson, and Willett, *Circuit Judges*.

Per Curiam:*

Joseph Morkos appeals the dismissal of his former employer's parent company from his employment discrimination suit. For the following reasons, we AFFIRM.

---

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-20267

## I.

On June 19, 2018, Plaintiff-Appellant Joseph Morkos filed an employment discrimination suit against his former employer, Defendant-Appellee DNV GL USA, Inc. ("DNV USA"), following his termination from DNV USA on February 2, 2018. On June 11, 2019, Morkos filed a supplement to his complaint, in which he added DNV USA's parent company, DNV GL Group AS ("DNV Group"), as a party to the action. On March 20, 2020, DNV USA and DNV Group moved for summary judgment on all of Morkos's claims. Relevant to this appeal, DNV USA and DNV Group argued that DNV Group should be dismissed from the action because Morkos could not establish that DNV Group was his employer, a necessary element for his pending claims. On December 3, 2020, the magistrate judge overseeing this case granted partial summary judgment for DNV USA and DNV Group and dismissed DNV Group from the action. Specifically, the magistrate judge held that there was "no summary judgment evidence" demonstrating that (1) DNV USA and DNV Group interacted beyond their admitted parent-subsidiary relationship or that (2) DNV Group was "party to, or responsible for, any action taken by DNV USA about which Morkos complains in this case." The magistrate judge also granted summary judgment for DNV USA on Morkos's claims for discrimination under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 and his claim for intentional infliction of emotional distress. Morkos twice moved for reconsideration of DNV Group's dismissal, and both motions were denied. After a trial, a jury issued a take-nothing verdict on Morkos's remaining claims. On appeal, Morkos challenges the dismissal of DNV Group from this action. Morkos also argues that he was deprived of a fair trial because DNV Group's absence from the remaining proceedings was "seriously prejudicial to [his] ability to present his claims."

2

No. 22-20267

## II.

"We review a district court's grant of summary judgment de novo, applying the same standard on appeal as that applied below." *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A genuine dispute as to a material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Rogers*, 755 F.3d at 350 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "all justifiable inferences" are made in the nonmoving party's favor. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

> If, as here, the nonmoving party bears the burden of proof at trial, the moving party may demonstrate that it is entitled to summary judgment by submitting affidavits or other similar evidence negating the nonmoving party's claim, or by pointing out to the district court the absence of evidence necessary to support the nonmoving party's case.

*Id.* If the moving party meets its burden, the nonmoving party is then required to "go beyond the pleadings," either by "her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,'" so as to "designate 'specific facts showing that there is a genuine [dispute] for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting FED. R. CIV. P. 56(e)). "[M]ere conclusory allegations are not competent summary judgment evidence." *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

We examine four factors in determining whether a parent corporation and its subsidiary may be regarded as a single employer: "(1) interrelation of operations, (2) centralized control of labor or employment decisions, (3)

3

common management, and (4) common ownership or financial control." *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 777 (5th Cir. 1997) (citing *Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir. 1983)). "The doctrine of limited liability creates a strong presumption that a parent corporation is not the employer of its subsidiary's employees." *Id.* at 778.

> Only evidence of control suggesting a significant departure from the ordinary relationship between a parent and its subsidiary—domination similar to that which justifies piercing the corporate veil—is sufficient to rebut this presumption and to permit an inference that the parent corporation was a final decision-maker in its subsidiary's employment decisions.

*Id.* (citation omitted).

As at summary judgment, DNV USA again avers that DNV Group was not Morkos's employer, arguing that Morkos cannot point to any evidence that would negate the "strong presumption that a parent corporation is not the employer of its subsidiary's employees." *See id.* at 778. We agree—Morkos's evidence is paltry by comparison to what he must show.

In support of the first factor for the single-employer test— interrelation of operations—a plaintiff may point to evidence that a parent corporation:

> (1) was involved directly in the subsidiary's daily decisions relating to production, distribution, marketing, and advertising; (2) shared employees, services, records, and equipment with the subsidiary; (3) commingled bank accounts, accounts receivable, inventories, and credit lines; (4) maintained the subsidiary's books; (5) issued the subsidiary's paychecks; or (6) prepared and filed the subsidiary's tax returns.

*Id.* Morkos, however, can point to no evidence resembling the above and instead directs us to deposition testimony concerning a recruiting advertisement that reads, "Whether you work in Oslo, Singapore, Houston or Hamburg you will be a part of an international team and work with colleagues and customers from different countries and cultures." But in that same deposition, counsel for Morkos acknowledges that this quoted document includes a notation stating that DNV Group "has no employees." Morkos also points to testimony quantifying the "number of collective employees" across all of DNV Group's legal entities. None of this evidence, though, goes beyond the "ordinary relationship" that exists between a parent corporation and its subsidiary. *Id.* Morkos also cites conclusory statements from his own affidavit that "[a]t all times, my job assignments, salary, annual performance ratings, annual salary adjustments and any awards or personal recognitions were subject to approval of officials of [DNV Group]," with no corroborating evidence. This is not "competent summary judgment evidence." *See Eason*, 73 F.3d at 1325; *Ragas*, 136 F.3d at 458.

With respect to the second factor—centralized control of labor or employment decisions—Morkos points to the events surrounding his termination. Specifically, Morkos cites an email between his direct supervisor employed by DNV GL Limited, Anita Kovacs, and Michael McCaffrey, a human resources manager for DNV USA employed by Group Global Shared Services, an organization that provides human resources and corporate governance services to DNV Group and its subsidiaries. In that email, Kovacs asks if there is "any option to terminate Joe Morkos's employment." McCaffrey later testified that he told Kovacs that they could not terminate Morkos at that time because he was on "protected leave." Morkos also argues that Hege Espedal, the finance director for digital solutions at DNV GL AS, was ultimately responsible for his termination and the hiring of his replacement. But this evidence demonstrates that

employment decisions were *not* centralized. All three of these individuals were employed by different entities at the time of Morkos's termination—McCaffrey by Group Global Shared Services, Kovacs by DNV GL Limited, and Espedal by DNV GL AS—none of which was DNV Group. Furthermore, Morkos does not show that these three individuals coordinated his termination. Morkos again cites his affidavit for the proposition that his "job assignments, salary, annual performance ratings, annual salary adjustments and any awards or personal recognition were subject to approval by [DNV Group]," but we need not rely on mere conclusory allegations at summary judgment. *See Eason*, 73 F.3d at 1325; *Ragas*, 136 F.3d at 458.

For the third factor—common management—Morkos similarly presents unconvincing evidence. First, he cites the DNV USA website, which reads, "DNV GL comprises about 300 sites in more than 100 countries, and has revenues of about EUR 2,500 million per year. Our 16,000 professionals around the world are dedicated to helping our customers make the world safer, smarter and greener." Morkos contends that this statement shows that "DNV USA promotes and seeks advantage from its being considered as part of [DNV Group]." Second, Morkos refers us to various organizational charts which show DNV Group as the parent to numerous subsidiaries, with Group Global Shared Services sitting below the subsidiaries as well. Above one such chart, DNV Group is referred to as the "group management company of the DNV GL group of companies." Third, Morkos argues that DNV Group has a code of conduct that is applicable to all its subsidiaries' employees. Fourth, he directs us to a letter he received from an employee of DNV GL AS informing him of a salary increase. But all of this is also typical of a parent-subsidiary relationship. None of this demonstrates that DNV Group was involved in or responsible for making DNV USA's employment decisions.

Morkos's arguments regarding the fourth factor—common ownership or financial control—are likewise unavailing. He argues, and DNV USA does not contest, that DNV Group controls the entire interest in each of its subsidiaries. But again, a controlling interest alone is not enough to overcome the strong presumption that a parent corporation is not the employer of a subsidiary's employees. *Lusk*, 129 F.3d at 778.

Overall, Morkos does not demonstrate that the relationship between DNV USA and DNV Group was out of the ordinary. There is no evidence that DNV Group dominated DNV USA to a degree that would lead us to believe that DNV Group was directly involved in the employment decisions for Morkos or any other employee of DNV USA. Therefore, Morkos cannot overcome the presumption that DNV USA and DNV Group acted as a single employer, and the magistrate judge was correct in dismissing DNV Group from this action. Accordingly, because the dismissal of DNV Group was proper, Morkos could not have suffered prejudice from its absence during the remainder of this litigation.

## III.

Therefore, for the foregoing reasons, we AFFIRM.